IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BOBBY R. GRANT, JR.,

    Petitioner,      No. 2:11-cv-1207 LKK CKD P

    vs.

RANDY GROUNDS,

    Respondent.      FINDINGS AND RECOMMENDATIONS

_____/

Petitioner, a state prisoner, proceeds pro se with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 19.) He challenges his 2008 convictions in the Sacramento County Superior Court, case number 08F01588, on charges of rape and making criminal threats. Respondent's answer and petitioner's traverse are also before the court. (ECF Nos. 37, 39.) After careful consideration of the record and applicable law, it is recommended that the petition be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The California Court of Appeal, Third Appellate District, summarized the facts underlying petitioner's offenses in an unpublished opinion on direct appeal:

> In September 2007, K.C. was 15 years old. Not getting along with her parents, she moved out of their home and moved in with her grandparents. A few months later, she moved out of her

1

grandparents' home and eventually ended up staying with her friend Melissa. There, she met defendant and [co-defendant] Raul Garcia. K.C. and Garcia immediately became romantically involved and she moved into his apartment on Norcade Circle. She stayed with Garcia in his bedroom. About a week later, defendant started staying in the apartment. K.C. lived at the apartment for about three weeks. She considered Garcia her boyfriend and had consensual sex with him about five times. During this time, K.C. also used various drugs, including cocaine, methamphetamine, and marijuana.

On February 26, 2008, K.C. and Garcia argued. K.C. told Garcia and defendant she did not want to stay with them anymore and wanted to leave. Defendant appeared angry. He asked whether they were supposed to let her stay at the apartment for free, without giving him and Garcia anything in return. K.C. offered them money, but they refused it. By the end of the argument, K.C. assured them she was not going to leave. She walked down the street with a friend to a neighbor's house.

K.C. later returned to the apartment and went into Garcia's bedroom to pack her things. Garcia followed her into the room and insisted she was not leaving. Garcia left the room and defendant entered. He told K.C. she could not leave and instructed her to take off her clothes. She told him she did not want to and he threatened to "blow [her] noodles out if [she] didn't have sex" with him.

K.C. complied and took off her clothes. Defendant ordered her to orally copulate him and she did. Defendant then raped K.C.

As K.C. began to get dressed, Garcia came in the room and told her not to put her clothes back on. She told him she did not want to, but she was afraid and complied with his orders. Garcia then raped K.C. Despite K.C. telling Garcia he was hurting her, he did not stop. He then grabbed her by the hair and forced her to orally copulate him. Garcia ejaculated in her mouth and she spit out the semen on a blanket. As K.C. was again putting on her clothes, Garcia threatened to kill her if she tried to leave.

K.C. was frightened. She had seen Garcia with a shotgun numerous times before, and had overheard defendant threatening to kill people with the shotgun. She also had seen a shoe box of ammunition kept in defendant's closet. The shotgun was kept in defendant's bedroom closet. After the assaults, K.C. tried to act like "everything was okay." She went to get something to drink, then went back into Garcia's bedroom and fell asleep lying between defendant and Garcia. The next morning, K.C. showered and changed clothes. Garcia and defendant talked about making a drug deal and left the apartment. They took the shotgun to a friend's house. After Garcia and defendant left, K.C. packed some

of her things and went to her friend's home. She spend the day at her friend's. She smoked some marijuana and called her mother and her cousin Starla. Over the course of numerous phone calls, K.C. gave varying accounts to Starla and Starla repeatedly told K.C. to leave the house. When K.C. finally told Starla she had been raped while the perpetrators held a shotgun to her head, Starla called 911.

Police officers responded to Starla's call and arrived at Norcade Circle at around 7:20 p.m. K.C. was still at her neighbor's house and was very afraid. She was placed in a patrol car and interviewed. She told officers that defendant was staying with Garcia in Garcia's apartment, and that she thought defendant might currently be in the apartment. K.C. then saw Garcia walking down the street and identified him to officers. Garcia was arrested.

At the scene, officers determined Garcia was on searchable probation. After getting the keys to the apartment, officers conducted a protective sweep of the apartment because they were concerned defendant, and armed suspect, might be inside. There was no one in the apartment. Crime scene investigators entered the apartment and began processing evidence. Officers later searched the apartment, pursuant to the terms of Garcia's probation.

The search began in the upstairs southeast bedroom. There was no bedding or blankets in the room. In a closet on the shelf, officers found a shoe box with ammunition in it, a candle with two rounds of ammunition and plastic baggies of the sort used as packaging materials for narcotics. There was also a pair of jeans on the bed with defendant's identification in the pocket.

In an upstairs hallway, officers found 15 prepackaged bags of marijuana. There were similar bags found in the kitchen cupboards.

In the second bedroom, documents with Garcia's name were found in the closet. No contraband was found in that room.

K.C. was taken to U.C. Davis for a medical examination. The forensic nurse practitioner examined K.C. and collected samples. K.C. reported her neck, back and legs hurt and she had pain when walking or urinating. She identified her assailants as Garcia, age 20, and "Bob," age 34. She told the examining nurse that defendant and Garcia had threatened to kill her because she knew too much about their drugs and guns. K.C. reported defendant and Garcia had penetrated her and forced her to orally copulate them, they both kissed and licked her, ejaculated in her vagina and Garcia also ejaculated in her mouth and on a blanket. K.C. had multiple bruises on her arms and thigh, an abrasion on her labia majoria, her fossa was very red and tender and she had a cervix which bled easily.

3

> K.C.'s urine sample tested positive for a metabolite of cocaine, a metabolite of cannabis, amphetamine and methamphetamine. K.C. had snorted powder cocaine before the rapes and smoked marijuana after the rapes. She had also used methamphetamine about a week before the rapes. A couple of days before the rapes, K.C. had taken cocaine and had been up for about two or three days without sleep.
>
> DNA samples were taken from K.C.'s vagina and underpants. Defendant could not be excluded as a contributor to the sperm on the vaginal swabs, and he was a major contributor of the sperm on her underpants. A penile swab taken from Garcia which produced two sperm fractions, one from Garcia and one from defendant.
>
> Evidence of a prior uncharged sexual offense from 1999 was also admitted. S.B. testified that when she was 18 years old, and transitioning out of foster care, she was placed in a program at a youth center. She, her roommate A.M., and two men, including defendant, were spending time together at the apartment. S.B. went into her bedroom, changed clothes and got into bed. Defendant came into the room and she asked him to leave. Later, he returned, got undressed and got into bed behind her. He then raped her. When police began investigating the rape, defendant came by the apartment and told A.M. he would "take care of" S.B. if she called the police.
>
> A.M. testified that S.B. had been massaging defendant for about 20 minutes and that they went into her bedroom together. Defendant came out about 30 minutes later. A.M. did not recall defendant threatening to harm S.B. if she spoke to the police.
>
> During deliberations, the jury asked whether defendant had been convicted of raping S.B. In response, the court directed the jury to reconsider the jury instruction on this point, CALCRIM No. 1191, that evidence of an uncharged sexual offense could be considered only if the People had proven he committed the act by a preponderance of the evidence.

(Lodged Document (LD)[1] 4 at 2-7.)

Petitioner was charged with two counts of forcible oral copulation in concert with Garcia (Cal. Penal Code § 288(a)(d)) (counts one and four); two counts of rape in concert with Garcia (Cal. Penal Code § 264.1) (counts two and three); one count of making criminal threats (Cal.

---

[1] See Notice of Lodging Document in Paper (ECF No. 38).

1  Penal Code § 422) (count seven); and one count of possession of ammunition by a felon (Cal.
2  Penal Code § 12316(b)(1)) (count eight). (LD 4 at 7.) It was further alleged that petitioner had
3  incurred a prior serious felony conviction and served a prior prison term. (Id.)

4      In a joint trial with Garcia, a jury acquitted petitioner of two counts of oral copulation and
5  one count of rape in concert. (LD 4 at 7.) The jury found him guilty of making criminal threats,
6  guilty of rape as a lesser included offense of rape in concert, and guilty of possession of
7  ammunition by a felon. (Id.) The jury deadlocked on forcible oral copulation as a lesser
8  included offense to the two oral copulation in concert charges and deadlocked on the second rape
9  charge. (Id.)

10      Petitioner was sentenced to an aggregate term of 24 years and eight months in prison,
11  consisting of the upper term of eight years on the rape count, doubled to 16 years pursuant to the
12  Three Strikes law; the midterm of one year and four months for making a criminal threat, to be
13  served concurrently; one year and four months on the felon in possession count, to be served
14  consecutively; plus five years for the prior serious felony and one year for the prior prison term.
15  (LD 4 at 8.)

16      On appeal to the California Court of Appeal, Third Appellate District, petitioner claimed
17  the trial court erred in (1) denying the defense motion to suppress evidence based on an alleged
18  illegal search and seizure, (2) excluding evidence that his prior sexual misconduct charges were
19  dismissed, and (3) imposing a concurrent term for the rape and criminal threats convictions. (LD
20  1.) The People conceded the third point and the state appellate court ordered the sentence on
21  count seven stayed. (LD 4 at 1, 19.) In addition, the state appellate court agreed with petitioner
22  that the trial court erred in denying the motion to suppress evidence and reversed his conviction
23  and accompanying sentence on count eight, felon in possession of ammunition. (Id. at 8, 20.)
24  The state appellate court rejected his claim that the trial court erred in excluding evidence of the
25  dismissal of his prior sexual misconduct charges, finding no prejudicial error. (Id. at 1, 18-19.)
26  Petitioner then presented his evidentiary exclusion claim in a petition for review to the California

Supreme Court, where review was denied. (LD 5, 6.)

Petitioner sought habeas corpus relief in the California Court of Appeal, Third Appellate District, presenting a single claim that appellate counsel rendered ineffective assistance. (LD 7.) The petition was denied. (LD 8.) Petitioner did not file any other habeas corpus petitions in state court.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Wilson v. Corcoran</u>, 131 S. Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." <u>Stanley</u>, 633 F.3d at

859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

/////

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

7

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court presumes that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id. at 1097; Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

In addition, when a state court's decision on the merits does not satisfy the criteria set forth in § 2254(d), a federal habeas court conducts a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey,

8

533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

II. Petitioner's Claims

The amended petition presents two grounds for relief: (A) that evidence obtained from an illegal search and seizure was unconstitutionally admitted at petitioner's trial; and (B) that the trial court's exclusion of evidence that petitioner's prior sexual misconduct charges were dismissed violated his right to due process and a fair trial.

A. Illegal Search and Seizure

In ground one, petitioner claims he was subjected to an unlawful search and seizure in violation of the Fifth Amendment. (ECF No. 19 at 5.) He states his probation status was insufficient to justify the search and the trial court erred in finding the doctrine of inevitable discovery applicable. (Id.) Respondent contends first, that this ground is unexhausted because petitioner did not present it to the California Supreme Court, and second, that the ground is without merit because as it is barred by the Supreme Court's holding in Stone v. Powell, 428 U.S. 465 (1975). (ECF No. 37 at 6-7.)

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the state's highest court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986). If exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3). Regardless, a petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2); see also Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (holding that a district court may deny an unexhausted claim on the merits notwithstanding a petitioner's failure to exhaust when it is perfectly clear the claim is not "colorable").

In Stone v. Powell, 428 U.S. 465 (1975), the Supreme Court held:

> "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

Id. at 482. Under Stone, "[a] Fourth Amendment claim is not cognizable in federal habeas corpus proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court." Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." Id.; see also Locks v. Sumner, 703 F.2d 403, 408 (9th Cir.), cert. denied, 464 U.S. 933 (1983).

Here, the record reflects that petitioner had a full and fair opportunity to litigate his claim. Prior to trial, the defense filed a motion to suppress the evidence procured as a result of the unlawful search (ammunition). The trial court held a suppression hearing during which the defense presented evidence, examined witnesses, and gave argument. (Reporter's Transcript ("RT") at 119-246.) The trial court denied the motion to suppress. (RT at 246.) As set forth, however, on appeal, the state appellate court agreed with petitioner's argument that the trial court had erred in denying the motion to suppress. The state appellate court reversed his conviction and sentence for possession of ammunition by a felon. (LD 4 at 8-18.) Petitioner was, therefore, awarded the relief he sought in the state court proceedings. He nevertheless attempts to present the same claim[3] on federal habeas corpus. Because petitioner had a full and fair opportunity to

---

[3] Petitioner's illegal search and seizure claim is asserted (without explanation) as being brought under the Fifth Amendment, rather than under the Fourth Amendment. (ECF No. 19 at 5.) This does not save his petition from imposition of the Stone bar. It is clear that the gravamen of petitioner's claim is that his Fourth Amendment rights were violated by the search and seizure. "Attempts to find other names for that claim will not make it any more cognizable in the context of a federal habeas petition." Herrerra v. Kelly, 667 F.Supp. 963, 970 (E.D.N.Y. 1987) (holding that a habeas petitioner's attempt to re-label a claimed Fourth Amendment violation as a due process and/or equal protection violation was unavailing under Stone); see also Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct,

litigate his Fourth Amendment claim in state court and because the relief sought was in fact awarded, federal habeas corpus relief is not available.

B.   Evidentiary Exclusion

In ground two, petitioner claims the trial court's exclusion of evidence relating to the dismissal of his prior sexual misconduct charges violated his right to due process and a fair trial. (ECF No. 19 at 5.)  As discussed, evidence was admitted that petitioner was charged with the alleged rape of S.B. in 1999.  (LD 4 at 18.)  The charges were dismissed by the prosecution in February 2000.  (Id.)  Defense counsel moved in limine to allow evidence of that dismissal to be admitted into evidence.  (Id.)  The file for the 1999 case had been destroyed, so it was unclear why the charges were dismissed.  (Id.)  The trial court denied the defense motion, noting there are many reasons why cases get dismissed and that uncertainty would lead to too much speculation by the jury.  (Id.)

Petitioner contends that evidence of the dismissal would have been helpful to the jury in assessing the credibility of the evidence of prior sexual misconduct because a dismissal, like an acquittal, shows lack of evidence.  (Id.)  He further argues that California law provides for the admissibility of character traits.  (Id.)

Respondent contends first, that petitioner "failed to exhaust this claim in the state's highest court." (ECF No. 37 at 7.)  Respondent cites to the petition for review presented on petitioner's behalf to the California Supreme Court but does not elaborate further.  (Id.)  The sole claim presented in that petition for review was as follows: "Review is necessary to resolve the issue of whether the trial court prejudicially erred in excluding evidence that charges relating to alleged prior sexual misconduct were dismissed." (LD 5 at i.)  Because respondent has failed to

---

that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); Gilmore v. Marks, 799 F.2d 51, 57 (3rd Cir. 1986) ("Even though due process violations, unlike some Fourth Amendment violations, are cognizable in a habeas proceeding in federal court, petitioner may not cloak his or her Fourth Amendment claim in due process clothing to circumvent Stone v. Powell." (internal citations omitted)).

develop the argument that petitioner failed to exhaust state court remedies, and because this ground is not colorable, this court should reach the merits and deny the claim. See Cassett, 406 F.3d at 623-24.

Presented with this claim on direct appeal, the state appellate court declined to decide whether error occurred and rejected the claim based on a finding that any error was harmless. (LD 4 at 19.) The court held:

> In this case, K.C. testified as to defendant's rape of her. She was visibly frightened when speaking to the police. A physical examination the next day revealed multiple bruises on her arms and thigh. Areas of her genitals were abraded, red and tender. DNA samples taken from K.C.'s vagina and underpants were consistent with defendant. A penile swab taken from Garcia also produced evidence of defendant's sperm. In addition, the jury saw the victim of that offense testify and could judge her credibility for themselves. On this record, it is not reasonably probable that evidence of the dismissal of the charges related to S.B. would have led to an acquittal on the charges related to K.C..

(Id.)

On habeas corpus review, the applicable standard for harmless error is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Fry v. Pliler, 551 U.S. 112, 120 (2007); see also Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (citing Fry, 551 U.S. at 120). For the same reasons explained by the state court in applying its harmless error analysis, the trial court's evidentiary exclusion did not have substantial and injurious effect or influence in determining the jury's verdict. In particular, K.C.'s testimony was corroborated by the forensic findings, and the jury was able to weigh her credibility based on her direct testimony and cross-examination by the defense. If evidence of the dismissal of the prior sexual misconduct charges against petitioner had been admitted, the jury could only have speculated as to the meaning of that dismissal as the record gave no indication why the charges were dismissed. Under these circumstances, the evidentiary exclusion did not have substantial and injurious effect or influence in determining the jury's verdict. No relief is available.

CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections petitioner elects to file, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

Dated: June 3, 2013

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
gran1207.157